STATE OF WEST VIRGINIA

*In re* **J.T.-1**

**No. 20-0097** (Pocahontas County 19-JA-13)

**FILED**

**September 3, 2020**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Father J.T.-2, by counsel Laura Elizabeth Spadaro, appeals the Circuit Court of Pocahontas County's January 8, 2020, order terminating his parental and custodial rights to J.T.-1.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel S.L. Evans, filed a response in support of the circuit court's order and a supplemental appendix. The guardian ad litem, R. Grady Ford, filed a response on behalf of the child in support of the circuit court's order. On appeal, petitioner argues that the circuit court erred in terminating his parental and custodial rights without requiring the DHHR to provide supportive services and in failing to impose a less-restrictive dispositional alternative.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In June of 2019, the DHHR filed an abuse and neglect petition against petitioner after receiving a referral that no one was at the child's bus stop to pick him up from school, which resulted in the child remaining in the custody of school personnel until 9:30 p.m. when petitioner finally responded to repeated attempts to contact him. According to the petition, the DHHR implemented a temporary protection plan after this incident but could not reach petitioner for several days while the plan was in place. Eventually, the DHHR learned that petitioner had been arrested for a bond violation and was being held in a regional jail. Later, another incident occurred

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W. Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W. Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W. Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W. Va. 641, 398 S.E.2d 123 (1990). Additionally, because the child and the father share the same initials, they will be referred to as J.T.-1 and J.T.-2 throughout this memorandum decision.

in which petitioner was not waiting for the child at the bus stop and the child was taken to his aunt's house, despite the fact that the aunt denied that petitioner had made any arrangements for her to provide the child care. In its petition, the DHHR also referenced an incident in 2018 during which the child suffered a gunshot wound and had to be transported by helicopter to a hospital in Virginia. According to the DHHR, since the child's release from the hospital, petitioner had not taken him back to a doctor for follow-up care for his serious injuries.

The DHHR later implemented an in-home safety plan that required petitioner to participate in services to ensure the child's safety. Petitioner agreed to and signed this plan. At a multidisciplinary team ("MDT") meeting to discuss petitioner's participation in services, petitioner disclosed that he was a recovering drug addict. Despite indicating that he would pass a drug screen, petitioner's screen was positive. During the MDT meeting, petitioner agreed to follow up with the child's treatment for his gunshot wound and agreed that the child should undergo counseling for the trauma that he had suffered. Petitioner additionally agreed to participate in parenting and adult life skills classes and submit to random drug and alcohol testing, among other requirements. Despite these requirements, petitioner tested positive for multiple substances in February and March of 2019, including methamphetamine and amphetamine. By April of 2019, petitioner had failed to enroll the child in counseling services, allowed the child to "miss[] school randomly," and continued to test positive on his drug screens. The DHHR also provided petitioner with information on substance abuse treatment centers. By late May of 2019, the child was still not enrolled in counseling, truancy charges had been filed against petitioner due to the child's twenty-three-and-a-half unexcused absences during the school year, and petitioner was not compliant with his services, including failing to report for drug screens since April of 2019. The DHHR alleged that petitioner abused and/or neglected the child based on his continued substance abuse, failure to ensure the child's school attendance, and failure to comply with services.

Thereafter, petitioner stipulated to the allegations against him at an adjudicatory hearing in July of 2019. During the hearing, the circuit court addressed petitioner's request for a post-adjudicatory improvement period. The DHHR tendered proposed terms and conditions for such an improvement period to the court and the parties, and petitioner agreed to the terms. The guardian did advise the court, however, that petitioner did not participate in the creation of the terms and conditions of the improvement period because he became angry and left the meeting where they were discussed. According to the guardian, petitioner had not been compliant with the MDT process. Ultimately, the circuit court granted petitioner a post-adjudicatory improvement period that required him, in part, to participate in a psychological and substance abuse evaluation; "focus on achieving and maintaining sobriety by following the recommendations of the psychological and substance abuse evaluation, whether it be short-term, long-term, inpatient or outpatient, or an alternative;" comply with random drug screens; participate in parenting and adult life skills services; participate in visitation with the child; participate in MDT meetings; and remain in contact with the DHHR.

The circuit court thereafter held a review hearing in October of 2019, during which it was reported that petitioner had not been present at a recent MDT meeting. Petitioner's counsel informed the court that petitioner had been admitted to a detoxification program that month, but the facility could not confirm his admission. The following month, the circuit court held a dispositional hearing. Petitioner did not appear for the hearing, but was represented by counsel

who informed the court that she last had contact with petitioner the prior month and had no explanation for his absence. The DHHR then put on extensive evidence of petitioner's noncompliance with services. One DHHR employee testified that petitioner "was supposed to undergo the psychological and substance abuse evaluation to decide what services were going to be appropriate for him to undergo, and he did not undergo that, the evaluation." Further, the employee testified that a portion of the parenting and adult life skills services were "geared towards substance abuse treatment, but he did not participate in those." The employee also testified that petitioner was given materials for various substance abuse treatment facilities on two occasions and that a DHHR employee offered assistance in filling out the materials. Further, after obtaining acceptance into a detoxification program, petitioner failed to report to the program. The DHHR also arranged for petitioner to receive a medical card in order to pay for any substance abuse treatment. Additionally, the DHHR was unaware of where petitioner lived at the time of the dispositional hearing.

One of petitioner's service providers testified that petitioner's participation in parenting and adult life skills education was so sporadic that he made no progress in learning to provide a safer environment for the child. Out of thirty-six sessions the provider scheduled, petitioner appeared for only six. The provider also testified to her assistance in getting petitioner accepted to a detoxification program. According to the provider, petitioner contacted the detoxification program from her office and was accepted. The provider also gave petitioner a ride home that day and offered to provide him transportation to the detoxification program. She testified, however, that he never attended the program. Further, testimony established that petitioner did not attend any visits with the child during the proceedings, despite the fact that the provider took extensive steps to locate petitioner and explain the process for participating in visits to him. Finally, testimony established that petitioner tested positive for controlled substances throughout the proceedings.

Based on the evidence, the circuit court found that petitioner "repeatedly failed to avail himself of specific services provided by the [DHHR] to address the issues that led to the filing of the [p]etition, including substance abuse treatment." The circuit court highlighted the fact that the DHHR went so far as to dial the number of a detoxification program for petitioner, "which would have been the first step of substance abuse treatment," and also offered him transportation to such program on two occasions. Despite the DHHR's assistance, petitioner failed to attend a detoxification program, participate in parenting and adult life skills, submit to a psychological and substance abuse evaluation, or visit with his child. According to the circuit court, "the [DHHR] presented overwhelming evidence [that petitioner] was offered reasonable services to address the problems leading to the filing of the [p]etition," but that petitioner simply failed to participate in those services in any meaningful way. Because of his failure to participate in the terms of his case plan, the circuit court found that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect in the near future. The circuit court further found that the child required continuity in care and caretakers that necessitated the termination of petitioner's parental and custodial rights in furtherance of the child's welfare. Accordingly, the circuit court

terminated petitioner's parental and custodial rights.[2] It is from the dispositional order that petitioner appeals.

The Court has previously established the following standard of review:

"Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). On appeal, petitioner argues that the circuit court erred in terminating his parental and custodial rights because the services the DHHR offered were inadequate to address his substance abuse issues. We find this argument to be without merit.

Petitioner is correct that, unless certain circumstances are present, the DHHR has a statutory obligation to make reasonable efforts to preserve the family and facilitate the return of a child to the home after emergency removal. W. Va. Code §§ 49-4-604(c)(6)(C)(iii) and (7). Petitioner's argument on appeal, however, is disingenuous in arguing that the services offered were insufficient to remedy his substance abuse. First, petitioner agreed to the terms and conditions of the case plan below. Absent an objection to the sufficiency of the services set forth in the case plan, petitioner cannot, on appeal, assert that those services were inadequate. *See Noble v. W. Va. Dep't of Motor Vehicles*, 223 W. Va. 818, 821, 679 S.E.2d 650, 653 (2009) ("'Our general rule is that nonjurisdictional questions . . . raised for the first time on appeal, will not be considered.' *Shaffer v. Acme Limestone Co., Inc.*, 206 W.Va. 333, 349 n. 20, 524 S.E.2d 688, 704 n. 20 (1999)."). Further, petitioner ignores the fact that he was ordered to undergo a psychological and substance abuse evaluation, which the DHHR arranged for him, in order to better understand the specifics of his addiction and specifically tailor services for him moving forward. Despite this order, petitioner failed to appear for the evaluation. Finally, the record shows that the DHHR took extensive steps toward securing substance abuse treatment for petitioner, including providing him with information about various substance abuse treatment programs on two occasions, reviewing that information with him, contacting a detoxification program on his behalf, and twice offering him transportation to that same detoxification program after he was accepted.

---

[2]The child's mother is deceased. According to respondents, the permanency plan for the child is adoption in his current foster home.

Petitioner's argument on appeal is, quite frankly, confusing in regard to what additional steps he believes the DHHR should have undertaken in an effort to force his compliance with the multiple services offered. According to petitioner, the DHHR's efforts were "completely lacking in insight or in the exercising of any specialized training or skills" for assisting him with entrance into a rehabilitation facility or other training program. It is unclear what specialized training or skills the DHHR's employees require in order to arrange for substance abuse treatment on his behalf, especially considering that the record shows that the employees were able to secure such treatment for petitioner. This argument appears, instead, to be an attempt to absolve petitioner of responsibility for failing to follow through with any of the services the DHHR offered, in contravention of West Virginia Code § 49-4-610(4)(A) which plainly states that when a parent is granted an improvement period, "the [parent] shall be responsible for the initiation and completion of all terms of the improvement period." The extensive evidence taken at the dispositional hearing shows that petitioner failed to comply with any of the services offered, a fact petitioner admits on appeal by asserting that "it is inarguable that [he] failed to comply with the terms and conditions of his improvement period." Given that the DHHR provided petitioner with appropriate and extensive services, we find no error in the circuit court relying on petitioner's failure to participate in those services in ordering termination of petitioner's parental and custodial rights.

Petitioner further argues that termination of his parental and custodial rights was erroneous because the circuit court's order did not contain specific findings in support thereof. Specifically, petitioner asserts that the circuit court did not make any specific findings as to why termination of his parental and custodial rights was in the child's best interests. We find, however, that the circuit court's order was sufficiently specific in its findings of fact such that termination was appropriate. According to West Virginia Code § 49-4-604(c)(6), a circuit court may terminate parental and custodial rights upon finding that there is no reasonable likelihood the conditions of abuse and neglect can be corrected in the near future and that termination is necessary for the child's welfare. Under West Virginia Code § 49-4-604(d)(3), a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected in the near future includes a circumstance in which "[t]he abusing parent . . . [has] not responded to or followed through with a reasonable family case plan or other rehabilitative efforts of social, medical, mental health, or other rehabilitative agencies designed to reduce or prevent the abuse or neglect of the child." As set forth above, petitioner failed to participate in any of the services offered and his argument regarding the sufficiency of the services provided is unavailing. In making its determination on this finding, the circuit court was sufficiently specific, finding that there was no reasonable likelihood petitioner could substantially correct the conditions of abuse and neglect "based on [his] lack of participation" with the family case plan and his "non-compliance with the terms and conditions" of his post-adjudicatory improvement period. Moreover, petitioner failed to visit with the child during the entire pendency of the proceedings, and we have held that "the level of interest demonstrated by a parent in visiting his or her children while they are out of the parent's custody is a significant factor in determining the parent's potential to improve sufficiently and achieve minimum standards to parent the child." *In re Katie S.*, 198 W. Va. 79, 90 n.14, 479 S.E.2d 589, 600 n.14 (1996) (citations omitted). As such, the evidence clearly supported the circuit court's finding in this regard, and petitioner's assertion that the finding was conclusory or insufficient in its specificity is unfounded.

Further, the circuit court made sufficient findings in regard to termination of petitioner's parental and custodial rights being necessary for the child's welfare. Although succinct, the circuit court specifically found that the child "needs continuity in care and caretakers, and a significant amount of time is required for the child to be integrated into a stable and permanent home environment." While petitioner argues that leaving his parental rights intact and placing the child in a legal guardianship would have been the more appropriate disposition, we disagree. As this Court has held,

> [i]n determining the appropriate permanent out-of-home placement of a child under W.Va. Code § [49-4-604(c)(6)], the circuit court shall give priority to securing a suitable adoptive home for the child and shall consider other placement alternatives, including permanent foster care, only where the court finds that adoption would not provide custody, care, commitment, nurturing and discipline consistent with the child's best interests or where a suitable adoptive home cannot be found.

Syl. Pt. 3, *State v. Michael M.*, 202 W. Va. 350, 504 S.E.2d 177 (1998). As the circuit court found, and in keeping with the direction from this Court above, establishing a permanent, stable home for the child through adoption best served his interests and such adoption could not take place until petitioner's parental rights were terminated. This was further reinforced by evidence that established that petitioner failed to obtain continued treatment for the child's serious gunshot injury and allowed the child to be truant from school. Simply put, petitioner's failure to properly care for the child and subsequent refusal to participate in any services designed to remedy these conditions left the circuit court with no choice but to terminate his parental and custodial rights in furtherance of the child's best interests. Accordingly, it is clear that the circuit court made sufficient findings that termination of petitioner's parental and custodial rights was necessary for the child's welfare.

Finally, as this Court has held,

> "[t]ermination of parental rights, the most drastic remedy under the statutory provision covering the disposition of neglected children, [West Virginia Code § 49-4-604] . . . may be employed without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood under [West Virginia Code § 49-4-604(d)] . . . that conditions of neglect or abuse can be substantially corrected." Syllabus point 2, *In re R.J.M.*, 164 W.Va. 496, 266 S.E.2d 114 (1980).

Syl. Pt. 5, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011). Accordingly, we find no error in the circuit court's termination of petitioner's parental and custodial rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its January 8, 2020, order is hereby affirmed.

Affirmed.

**ISSUED**:  September 3, 2020


**CONCURRED IN BY**:

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison